UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MARGARITA ALVISO, | CIV. No. 2:15-1368 WBS KJN |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| SELECT PORTFOLIO SERVICING, INC.; NATIONAL DEFAULT SERVICING CORPORATION; and DOES 1-20, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiff Margarita Alviso brought this action against defendants Select Portfolio Servicing, Inc. ("SPS") and National Default Servicing Corporation ("National Default") alleging violations of state law in connection with their efforts to foreclose on her home. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. They also request an order joining a required party under Rule 19. (Docket No. 4.)

1

I.   Factual and Procedural History

Plaintiff's case arises from a loan of $278,000 she received from First Franklin, N.A., a Division of National City Bank of Indiana, to purchase her residence.  (Compl. ¶ 21 (Docket No. 1-1).)  The loan was secured by a deed of trust recorded in Sacramento County, California, on September 23, 2005.  (See id. ¶¶ 21-23.)

In November 2011, plaintiff was unable to make her monthly payment and fell into default on the loan.  (Id. ¶ 27.)  Two years later, on December 16, 2013, the servicing rights on the loan were transferred to defendant SPS.  (Id. ¶ 28.)  Plaintiff alleges that, in early 2014, she reached out to SPS to explain her financial difficulty and request mortgage assistance.  (Id. ¶ 30.)

Sometime in the spring of 2014, SPS allegedly invited plaintiff to apply for a loan modification.  (Id. ¶ 31.)  Plaintiff alleges she gathered the required information forms and submitted them to SPS.  Plaintiff allegedly received a letter from SPS dated April 1, 2014, confirming that all documents had been received and SPS would begin the evaluation process for a modification.  (Id. ¶ 34.)  The letter informed plaintiff that the evaluation process would take approximately thirty days and SPS would respond after completing its review.  (Id. ¶ 35.)

Plaintiff alleges that, rather than performing the evaluation, SPS negligently mishandled her application packages and did not respond to her.  (Id. ¶ 36.)  SPS also allegedly failed to designate a single point of contact, as required by California law.  (Id. ¶ 37.)  This frustrated plaintiff's

2

1  attempts to discuss the status of her application.  (Id.)  Months
2  passed, while plaintiff fell deeper into arrears and incurred
3  additional late fees.  (Id. ¶ 38.)
4        In December 2014, a representative of SPS allegedly
5  told plaintiff to resubmit a new application for a loan
6  modification, despite the fact that plaintiff had not received a
7  determination on her spring 2014 application.  (Id. ¶ 39.)
8  Plaintiff also learned of a possible discrepancy in the amount
9  owed around February 2015, and she submitted a written request
10 for verification of the past-due amount.  (Id. ¶ 40.)
11       On February 20, 2015, defendants recorded a Notice of
12 Default.  (Id. ¶ 41.)  Plaintiff alleges that SPS did not respond
13 to her inquiry about the past-due amount until May 12, 2015, when
14 it responded by letter and provided her with financial records
15 from her account.  (Id. ¶ 43.)  The letter also requested
16 additional documentation in connection with her new application
17 for a loan modification.  (Id.)
18       On May 21, 2015, defendants recorded a Notice of
19 Trustee's Sale.  The original sale date was set for June 15,
20 2015, but defendants postponed it to July 7, 2015.  (Id. ¶¶ 47-
21 50.)  Plaintiff allegedly submitted her second complete
22 application for a loan modification to SPS by fax on June 4,
23 2015.  (Id. ¶¶ 44, 48.)
24       Plaintiff filed a Complaint on June 25, 2015, in
25 Sacramento County Superior Court asserting five claims: (1)
26 negligence; (2) violation of California Civil Code section
27 2923.6(c); (3) violation of California Civil Code section 2923.7;
28 (4) violation of California Civil Code section 2924.10; and (5)

3

violation of California Civil Code section 2924.11(f).  (Compl. ¶¶ 53-95.)  Defendants removed the action to federal court on June 29, 2015.  (Docket No. 1.)

Defendants now jointly move to dismiss all of plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  (Defs.' Mem. at 6-16.)  They also request that the court either order the co-borrower on the deed of trust, Pablo Perez-Najera, joined as a required party pursuant to Rule 19(a)(2) or dismiss the Complaint under Rule 12(b)(7).  (Id. at 3-5.)

II.  Failure to State a Claim

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The plausibility standard "does not require detailed factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Nor does it "impose a probability requirement at the pleading stage."  Starr v. Baca, 652 F.3d 1202, 1213 (9th Cir. 2011).  This standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the allegations."  Id. at 1217 (quoting Twombly, 550 U.S. at 556).  Ultimately, "[d]etermining whether a complaint states a

4

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

A.   Judicial Notice

In general, a court may not consider items outside the complaint when deciding a motion to dismiss, but it may consider items of which it can take judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). Defendants request that the court take judicial notice of eight documents they says relate to this action. (Defs.' Request for Judicial Notice ("RJN") at 4-5, Exs. A-H (Docket Nos. 5, 5-1).)

Requests for judicial notice made in conjunction with motions to dismiss have become common practice in this court. The court has previously noted its reluctance when considering a motion under Rule 12(b)(6) to allow parties to present evidence. See Blankenchip v. Citimortgage, Inc., Civ. No. 2:14-2309 WBS, 2014 WL 6835688, at *2-3 (E.D. Cal. Dec. 3, 2014) (citing Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998)). Presentation of evidence outside the pleadings is better suited to motions for summary judgment under Rule 56. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Nevertheless, defendants insist that the court may consider their eight exhibits without converting this motion into one for summary judgment. (Defs.' Mem. at 5-6.)

Seven of the eight exhibits are purported public records pertaining to plaintiff's mortgage. They include a deed of trust, several assignments of and substitutes of interests in that deed, a notice of default, and a notice of trustee's sale.

(See Defs.' RJN at 4-5, Exs. A-G.)

A court may take judicial notice of matters of public record in deciding a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), impliedly overruled on other grounds as recognized by Gollardo v. Dicarlo, 203 F. Supp. 2d 1160, 1162 n.2 (C.D. Cal. 2002). However, the court is hesitant to permit defendants to offer a selection of public records, possibly incomplete and out of context, when plaintiff has not had the opportunity to do so. The court has discretion in deciding whether to take notice of public records on a motion to dismiss. See id. (noting a court "may" take judicial notice of matters of public record and reviewing the district court's decision to take notice for abuse of discretion (emphasis added)). Accordingly, the court will exercise that discretion and deny defendants' request for judicial notice of Exhibits A through G.

Defendants also offer a letter they represent is the "April 1, 2014 written confirmation" referenced in plaintiff's Complaint. (Defs.' RJN at 5, Ex. H; see Compl. ¶¶ 34-35, 58-59, 93.) They invoke the "incorporation by reference" doctrine, by which the court may "take into account documents . . . alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading . . . even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and citations omitted).

If defendants intend to raise a factual dispute or

6

negate an element of plaintiff's claims, they must do so by moving for summary judgment.  Consideration of the April 1, 2014 letter involves similar concerns to consideration of select public records:  No evidence has been presented to lay a foundation for the letter or give it context.  Plaintiff has also not had a chance to conduct discovery pertaining to, for example, the letter's origin or the intended meaning of any ambiguous language in it.  See Baker v. Henderson, 150 F. Supp. 2d 13, 16 (D.D.C. 2001) (declining to consider a defendant's motion in the alternative for summary judgment before the plaintiff has been "afforded an appropriate opportunity to conduct discovery and submit materials").

As with public records, the incorporation doctrine "permits" the district court to consider material outside the pleadings, but it does not require it.  See Knievel, 393 F.3d at 1076 (emphasis added).  Exercising its discretion, the court will not consider Exhibit H for purposes of this motion.

B. Negligence

Plaintiff's first claim asserts that SPS negligently mishandled her application for a loan modification by, among other things, "toss[ing] it to the way-side with no intention of ever reviewing Plaintiff's qualifications for a loan modification."  (Compl. ¶¶ 54-64.)  To state a claim for negligence under California law, a plaintiff must allege duty, breach, causation, and damages.  Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1250 (2009).

"The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the

1    court to decide." Bowman v. Wells Fargo Home Mortg., Civ. No.
2    13-5850 MEJ, 2014 WL 1921829, at *6 (N.D. Cal. May 13, 2014)
3    (citing Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th
4    269, 278 (4th Dist. 2004)).  Defendants contend there is no duty
5    owed here.
6           Defendants cite two California cases, Nymark v. Heart
7    Federal Saving and Loan Association, 231 Cal. App. 3d 1089, 1096-
8    97 (3rd Dist. 1991), and Oaks Management Corporation v. Superior
9    Court, 145 Cal. App. 4th 453, 466 (4th Dist. 2006), for the
10   proposition that no duty is owed under California law if a
11   financial institution's involvement in the loan transaction does
12   not exceed the scope of its conventional role as a lender of
13   money.  But "Nymark and the cases cited therein do not purport to
14   state a legal principle that a lender can never be held liable
15   for negligence in its handling of a loan transaction within its
16   conventional role as a lender of money."  Jolley v. Chase Home
17   Finance LLC, 213 Cal. App. 4th 872, 898 (1st Dist. 2013) (quoting
18   Ottolini v. Bank of Am., Civ. No. 3:11-477 EMC, 2011 WL 3652501,
19   at *6 (N.D. Cal. Aug. 19, 2011).  Nymark and Oaks Management have
20   limited value here, as neither involved allegations that the
21   defendants mishandled an application for a loan modification.
22   See Nymark, 231 Cal. App. 3d at 1096-97 (addressing an appraisal
23   of the borrower's collateral); Oaks Mgmt. Corp., 145 Cal. App.
24   4th at 465-66 (addressing whether an attorney was properly
25   disqualified).
26          This court has previously found a duty of care where a
27   lender offers to consider a loan modification application.  See
28   Sokoloski v. PNC Mortgage, Civ. No. 2:14-1374 WBS, 2014 WL

6473810, at *8 (E.D. Cal. Nov. 18, 2014) (citing Jolley, 213 Cal. App. 4th at 905; Robinson v. Bank of Am., Civ. No. 5:12-494 RMW PSG, 2012 WL 1932842, at *7 (N.D. Cal. May 29, 2012)).  In doing so, it conformed to several recent federal district court and California cases that have found a duty owed to borrowers when lenders process a loan modification application in California.  See, e.g., Hsin-Shawn Sheng v. Select Portfolio Servicing, Inc., Civ. No. 15-0255 JAM KJN, 2015 WL 4508759, at *5 (E.D. Cal. July 24, 2015); Meixner v. Wells Fargo Bank, N.A., Civ. No. 14-2143 TLN EFB, 2015 WL 1893514, at *10 (E.D. Cal. Apr. 24, 2015); Johnson v. PNC Mortg., Civ. No. 14-2976 LB, 2015 WL 662261, at *4 (N.D. Cal. Feb. 12, 2015); Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941, 949-50 (1st Dist. 2014).

The California Supreme Court has not yet spoken on this issue, and the law remains unsettled.  See e.g., Hernandez v. Select Portfolio, Inc., Civ. No. 15-01896 MMM AJWX, 2015 WL 3914741, at *17-22 (C.D. Cal. June 25, 2015) (surveying cases before concluding, "although not without doubt," that "a lender that agrees to consider a borrower's loan modification application does not act outside its conventional role as a money lender and does not owe a duty of care.").  However, this court is persuaded that a duty exists in the instant context.  When SPS allegedly agreed to consider plaintiff for a loan modification in the spring of 2014, it took on a duty to handle her application with reasonable care.

Defendants also argue that plaintiff has failed to allege damages because the arrears plaintiff accumulated were the result of her own financial hardships and inability to make

mortgage payments, not SPS's alleged negligence.  (Defs.' Mem. at 12-13.)  The gist of this argument appears to addresses causation, not damages.  Regardless, plaintiff has adequately alleged the remaining elements.  She alleges that the negligent mishandling of her initial loan modification application damaged her by causing additional arrears and late fees beyond the anticipated time she should have received a decision on her application.  (Compl. ¶ 61.)  The alleged mishandling also caused her to suffer the cost and hardship of having to gather, populate, and resubmit a second application.  (Id. ¶ 64.)

Accordingly, because plaintiff has adequately alleged the elements of negligence, the court will deny defendants' motion to dismiss this claim.

    C.    Dual Tracking in Violation of Section 2923.6(c)

Plaintiff's second claim alleges that, soon after defendants mishandled her initial application for a loan modification and invited her to submit a "new" application, they committed "dual tracking" by filing a notice of trustee's sale.  (Compl. ¶¶ 65-69); see Hernandez, 2015 WL 3914741, at * 9 (defining "dual tracking").  California's Homeowner Bill of Rights ("HBOR") prohibits mortgage servicers and trustees from recording a notice of default, recording a notice of sale, or conducting a trustee sale while a "complete first lien loan modification application is pending."  Cal. Civ. Code § 2923.6(c).  Specifically, the mortgage service may not take any of the listed actions until one of the following occurs:

> (1)  The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period

10

   pursuant to subdivision (d) has expired.
   (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
   (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Id. An application is "complete" when the borrower has supplied all documents required by the mortgage servicer within a reasonable timeframe specified by the mortgage servicer. Id. § 2923.6(h).

   Plaintiff alleges that she submitted a complete application for a loan modification to defendants in the spring of 2014, including "each and every one of the requested paperwork, financial records, and forms." (Compl. ¶¶ 33, 66.) Defendants allegedly failed to furnish a decision on that application or any representative with whom plaintiff could check its status. Instead, in December 2014, plaintiff was allegedly told to submit an entirely new application. (Id. ¶¶ 36-39.)

   Plaintiff allegedly spent the first part of 2015 trying to resolve an apparent discrepancy in the amount she owed. (Id. ¶¶ 40-42.) She alleges that defendants failed to respond to those inquiries until a letter dated May 12, 2015. (Id. ¶¶ 43, 67-68.) Defendants then filed a notice of trustee's sale nine days later on May 21, 2015. (Id. ¶ 69.)

   Accordingly, because defendants allegedly filed a notice of trustee's sale after plaintiff had submitted a complete application in spring of 2014, but before any of the events listed in section 2923.6(c)(1)-(3) occurred, plaintiff has

plausibly pleaded a violation of section 2923.6(c).  The court will therefore deny dismissal of this claim.

  D. <u>Failure to Establish a Single Point of Contact in Violation of Section 2923.7</u>

  Plaintiff's third claim alleges that SPS failed to establish a single point of contact for communicating with SPS while plaintiff explored foreclosure prevention alternatives. (Compl. ¶¶ 76-84.)  This allegedly violated California Civil Code section 2923.7(a) ("Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.").

  Defendants contend this claim should be dismissed because plaintiff failed to allege that she explicitly requested a single point of contact.  Some courts have read the statutory language of section 2923.7(a) to require this allegation.  See <u>Diamos v. Specialized Loan Servicing LLC</u>, Civ. No. 13-04997 NC, 2014 WL 5810453, at *4 (N.D. Cal. Nov. 7, 2014) ("[T]he complaint never alleges that Diamos made a specific request for a single point of contact as required by § 2923.7."); <u>Williams v. Wells Fargo Bank, NA</u>, Civ. No. 13-02075 JVS, 2014 WL 1568857, at *8 (C.D. Cal. Jan. 27, 2014) ("[T]he text of section 2923.7 requires that the borrower make a specific request for a single point of contact.").

  However, other courts have interpreted the statutory language not to require such a specific request.  See <u>Hild v. Bank of Am., N.A.</u>, Civ. No. 14-2126 JGB, 2015 WL 401316, at *7

(C.D. Cal. Jan. 29, 2015) ("[Section] 2923.7(a) does not condition the appointment of a [single point of contact] on a borrower's specific request for such a contact; instead the statutory provision requires a [single point of contact] to be appointed when a borrower 'requests a foreclosure prevention alternative,' such as a loan modification."); <u>Penermon v. Wells Fargo Bank, N.A.</u>, Civ. No. 14-0065 KAW, 2014 WL 2754596, at *12 (N.D. Cal. June 11, 2014) ("A plain reading of the statute requires Wells Fargo to assign a [single point of contact] when a borrower requests a foreclosure prevention alternative.  It does not require a borrower to specifically request a [single point of contact]."); <u>Mungai v. Wells Fargo Bank</u>, Civ. No. 14-0289 DMR, 2014 WL 2508090, at *9-10 (N.D. Cal. June 3, 2014) ("The phrase 'upon request' simply indicates when the [single point of contact] must be assigned.").

Although the statute is not a model of clarity, the court finds the interpretation urged by plaintiff to be the more plausible.  As the court reads section 2923.7, subsection (a)'s initial phrase refers to only one request, not two.  That "request" is one for "a foreclosure prevention alternative."  See Cal. Civ. Code § 2923.7(a) ("Upon <u>request</u> from a borrower who <u>requests a foreclosure prevention alternative</u> . . . ." (emphasis added)).  The remainder of subsection (a) is an independent phrase that describes the mortgage servicer's obligations.  See <u>id.</u> (". . . the mortgage servicer shall promptly establish a single point of contact . . . .").

The court cannot believe the legislature intended section 2923.7(a) to require the borrower to make a specific

13

1  request for a single point of contact.  Borrowers may not know
2  they need to ask for a single point of contact, and lenders would
3  face administrative costs from tracking whether a borrower made a
4  specific request or not.  Moreover, what constitutes a specific
5  request?  One can only imagine the potential difficulties parties
6  and courts would face from trying to parse ambiguous requests to
7  determine whether they met the statutory requirement.
8        Accordingly, because section 2923.7(a)'s language and
9  several policy concerns weigh against defendants' interpretation,
10 the court concludes that failure to allege a specific request
11 does not justify dismissal of this claim.
12       Turning to the Complaint, plaintiff alleges that she
13 requested a loan modification, which is a foreclosure prevention
14 alternative.  (Compl. ¶¶ 78, 80); see Cal. Civ. Code § 2920.5(b).
15 She also alleges that SPS never designated a single point of
16 contact that fulfilled the criteria of section 2923.7(b) and that
17 she was "ignored for months a time, transferred aimlessly within
18 SPS's call center, and placed on hold for substantial and
19 unreasonable periods of time."  (Compl. ¶ 80.)  Accordingly,
20 plaintiff has plausibly alleged a violation of section 2923.7,
21 and the court will deny defendants' motion to dismiss this claim.
22     E.   Failure to Deliver Written Acknowledgement in Violation
23          of Section 2924.10
24       Plaintiff's fourth claim alleges that defendants failed
25 to acknowledge in writing receipt of documents in connection with
26 the second complete application she allegedly submitted on June
27 4, 2015.  (Compl. ¶¶ 85-90.)  Section 2924.10 requires a "written
28 acknowledgement" containing certain specified information within

14

1 | five business days of receipt of a complete modification
2 | application.  Cal. Civ. Code § 2924.10.
3 |       Plaintiff alleges that on June 11, 2015, five days
4 | after she submitted her complete application by fax to defendants
5 | on June 4, 2015, she still had not received any written
6 | acknowledgement or notice of deficiencies from defendants.
7 | (Compl. ¶ 89.)  Accordingly, because plaintiff has sufficiently
8 | alleged a violation of section 2924.10, the court will deny
9 | dismissal of this claim.
10 |     F.   <u>Collection of Late Fees in Violation of Section 2924.11</u>
11 |       Plaintiff's fifth claim alleges that, even after she
12 | submitted a complete loan modification application, late fees
13 | continued to "accrue[]" on her account and defendants continued
14 | "to attempt collecting" those fees in violation of California
15 | Civil Code section 2924.11(f).  (Compl. ¶¶ 38, 91-95.)
16 | Defendants argue this claim should be dismissed because
17 | subsection 2924.11(f) prohibits collecting, not merely charging,
18 | late fees, and plaintiff has not alleged that SPS ever received
19 | payment of late fees at any time.
20 |       Subsection 2924.11(f) states:  "The mortgage servicer
21 | shall not <u>collect</u> any late fees for periods during which a
22 | complete first lien loan modification application is under
23 | consideration or a denial is being appealed, the borrower is
24 | making timely modification payments, or a foreclosure prevention
25 | alternative is being evaluated or exercised."  Cal. Civ. Code
26 | § 2924.11(f) (emphasis added).  The parties have not provided,
27 | and the court cannot find, any published California case law
28 | addressing whether the term "collect" means the receiving of

15

payment or merely the assessment of fees on an account.[1]

It is a "well-established canon of statutory interpretation" that the use of different words or terms within a statute demonstrates an intent to convey a different meaning for those words. Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 689 (9th Cir. 2003). Subsection (e) of 2924.11 says a "mortgage servicer shall not charge any application, processing, or other free for a first lien loan modification or other foreclosure prevention alternative." Cal. Civ. Code § 2924.11(e) (emphasis added). Use of the term charge in that subsection therefore suggests a distinction between charging an account and collecting payment of fees.

At least one judge from the Central District of California recently employed a similar approach to interpreting section 2924.11(f) and concluded that "the California legislature intended to forbid lenders from compelling payment of late fees, not charging or assessing such fees, while borrowers' loan modification applications were pending." Davis v. U.S. Bank Nat. Ass'n, Civ. No. 15-01572 SJO JPRX, 2015 WL 2124938, at *5 (C.D. Cal. May 6, 2015). In the absence of controlling authority, the court finds this reasoning persuasive.

Accordingly, because plaintiff has not alleged that defendants received payment of late fees during the period her complete application was pending, only that late fees "accrued" or that defendants continued "to attempt" to collect them, (see

---

[1] Plaintiff cites only to an unpublished case from the California Superior Court for the County of Sacramento, Leonard v. JP Morgan Chase, No. 34-2014-00159785 CU OR GDS (Cal. Super. Ct. October 21, 2014).

16

Compl. ¶¶ 38, 94), the court will dismiss plaintiff's fifth claim.

III. <u>Failure to Join a Required Party</u>

"Rule 19 governs compulsory party joinder in federal district courts." <u>E.E.O.C. v. Peabody W. Coal Co.</u>, 400 F.3d 774, 778 (9th Cir. 2005); see Fed. R. Civ. P. 19.  It requires joinder of a party that will not destroy subject-matter jurisdiction if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  "The burden is on the moving party to produce evidence in support of the motion." <u>Zacharias v. U.S. Bank N.A.</u>, Civ. No. 14-02186 SC, 2014 WL 4100705, at *2 (N.D. Cal. Aug. 20, 2014) (citing <u>Makah Indian Tribe v. Verity</u>, 910 F.2d 555, 558 (9th Cir. 1990)).

Defendants argue that plaintiff's co-borrower on the loan and deed of trust, Pablo Perez-Najera, must be joined in this action because the court cannot grant plaintiff's requested relief without him.  Plaintiff requests various money damages, including compensatory, statutory, and punitive damages.  (Compl. at 19.)  She asks for an injunction ordering defendants to "record a Rescission of the Notice of Trustee's Sale" and "enjoining Defendants, and their agents, from attempting to

17

1 foreclose on the Subject Property." (Id.)  She also seeks
2 disgorgement and restitution of earnings, profits, compensation
3 and benefits received by defendants from their unlawful acts.
4 (Id.)  Finally, she requests an accounting of monies received by
5 defendants on plaintiff's loan.  (Id.)

6         The court agrees that plaintiff's entitlement to some
7 of the relief she seeks will be coterminous with Perez-Najera's
8 entitlement.  See Edwards v. Fed. Home Loan Mortgage Corp., Civ.
9 No. 12-04868 JSW, 2012 WL 5503532, at *3-4 (N.D. Cal. Nov. 13,
10 2012) (finding that co-borrowers shared coterminous interests in
11 an action against their lenders).  For example, damages related
12 to unlawfully increasing the amount owed on the loan would flow
13 equally to both plaintiff and Perez-Najera.

14         Defendants also argue that failure to join Perez-Najera
15 leaves them to face "a substantial risk of incurring double,
16 multiple, or otherwise inconsistent obligations."  Fed. R. Civ.
17 P. 19(a)(1)(B).  This point is well received.

18         In order to resolve these concerns, the court granted
19 plaintiff leave to file documentation establishing that Perez-
20 Najera claims no interest relating to the subject matter of this
21 action and agrees to accept any judgment of this court regarding
22 that subject matter as binding on him.  (See Aug. 11, 2015 Order
23 (Docket No. 9).)  Plaintiff filed a declaration on August 24, 2015,
24 signed by Perez-Najera.  (See Decl. of Non-party Co-borrower Pablo
25 Perez-Najera (Docket No. 10).)

26         The declaration states that Perez-Najera is aware of this
27 action and acknowledges his status as a co-borrower.  (Id. ¶ 2-3.)
28 He waives "any and all right to later prosecute any of the alleged

1  causes of action as set forth in Plaintiff's Complaint against these
2  named defendants at any future time, in any subsequent judicial
3  proceeding(s) upon the same or similar facts giving rise to
4  Plaintiff's claims as set forth in her Complaint." (Id. ¶ 4.)  The
5  declaration also waives all Perez-Najera's rights in the subject
6  property in the case of a foreclosure sale, and he agrees to waive
7  any right to raise issues of contested right to possession, title,
8  or ownership in the property should defendants prevail.  (Id. ¶¶ 5-
9  6.)

10         Accordingly, because this declaration sufficiently
11  addresses the court's ability to grant complete relief among
12  existing parties and the risk of double, multiple, or inconsistent
13  judgments against defendants, the court declines to order Perez-
14  Najera joined as a party at this time.

15         IT IS THEREFORE ORDERED that defendants' motion to
16  dismiss be, and the same hereby is, GRANTED with respect to
17  plaintiff's fifth claim and DENIED in all other respects.

18         Plaintiff need not file an amended complaint, but
19  should she choose to do so, plaintiff has twenty days from the
20  date this Order is signed to file an amended complaint that is
21  consistent with this Order.

22  Dated:  August 26, 2015

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE